In the Matter of the ACQUISITION OF LANDS for the Purpose of a Municipal Garage in and for the City of Utica.*

Supreme Court, Oneida County, September 3, 1930.

* Revd., 233 App. Div. 888.

*J. Herbert Gilroy, Corporation Counsel,* for the city of Utica.

*Merrill & Quinn* [*August Merrill* of counsel], for the defendant George F. Weaver Sons, Inc.

*Russel S. Johnson, amicus curiæ.*

Dowling, J.   On July 11, 1928, Fred J. Rath, then mayor of the city of Utica, recommended to the common council the purchase of a site for a municipal garage.   His recommendation was referred to the joint committee of city property, buildings and grounds. Said committee investigated about twenty sites which were suggested as available for municipal garage purposes.   On January 2, 1929, said committee reported to the common council the result of its investigation and recommended the acquiring of the site in question, which is known as the " Weaver Tract."   An ordinance was introduced declaring the intention of the council to acquire said site.   Upon objection of Alderman Hansmann, the ordinance was not adopted, but the council authorized a $100,000 bond issue for the purpose of acquiring a site and constructing a municipal garage.

Commissioner of Public Works Cronin reported to the council that from two and a half to three acres of land were required for a proper site.

On January 23, 1929, the ordinance of January second, declaring the intention of the city to acquire the Weaver site, was adopted and the city engineer was directed to report a description of the property.

On February 20, 1929, City Engineer Cookinham reported a description of the property, with an opinion favoring the acquiring of said Weaver tract.

On April 17, 1929, said engineer reported a description of the premises to the council and recommended that said site be acquired by condemnation proceedings. His report was referred to the joint committee of finance, city property, buildings and grounds.

On May 15, 1929, said committee reported to the common council favorable to an ordinance for a public hearing in the matter of acquiring the proposed site. On June 5, 1929, such public hearing was held and after hearing the interested parties the council ordained its determination, by a vote of eleven to three, to acquire said tract and instructed the city engineer and corporation counsel to negotiate for the purchase thereof.

On June 26, 1929, the city engineer and corporation counsel reported to the common council recommending acquiring the said property by condemnation proceedings, stating in their report the factors which rendered the acquiring of said property desirable.

On December 21, 1929, the city made petition to the Supreme Court for the appointment of commissioners of appraisal, it having been unable to agree with the defendant upon the price for said land. Said petition recited the necessity which existed for the acquiring of said premises for the housing of its motor equipment. The defendant defaulted in answering the petition and commissioners of appraisal were appointed by order signed that date.

The commissioners appointed organized, visited the property and heard the proofs of the parties. Being unable to agree, the commissioners handed up, May 29, 1930, two reports. The majority report fixed the value of the property and consequential damages at $29,500. The minority report fixed the value of the property at $37,500, and the consequential damages at $2,600, making a total of $40,100.

On June 11, 1930, the defendant procured an order directing the city to show cause why the majority report should not be set aside and the matter be submitted to the same, or other commissioners, on the ground that the award of $29,500 was grossly inadequate. On the return of said order to show cause, the city joined in the motion to set aside the said report, on the ground that the award, as made by the majority report, was grossly excessive. No affidavits were submitted on this motion by the city. The court

denied both motions and confirmed the award. Order of confirmation was signed and filed July 3, 1930. The commissioners' fees, stenographer's fees, costs, disbursements and allowances of the defendant, as taxed by the clerk, amounted to $6,813.75.

On January 1, 1930, Charles S. Donnelley became mayor of Utica. In his message to the common council he advocated the rescinding of the ordinances pertaining to the condemnation of the Weaver tract. This recommendation was in line with a pledge he had made during his campaign for election. On January 15, 1930, Alderman Hansmann introduced an ordinance to give effect to the recommendation contained in the mayor's message. This ordinance was sent to committee. On February 5, 1930, he moved that said committee be discharged from further consideration of said ordinance. This motion was ruled out of order by the president of the council. On February 19, 1930, Alderman Hansmann introduced a similar ordinance, which was sent to committee. On March 19, 1930, he moved for the discharge of the committee and his motion was lost. On February 19, 1930, Alderman Graham introduced an ordinance to the effect that the city abandon and discontinue condemnation proceedings. On March 5, 1930, the mayor sent the following communication to the common council:

" THE CITY OF UTICA
" OFFICE OF MAYOR
" CHARLES S. DONNELLEY
" Mayor

" UTICA, N. Y.
" *March* 5, 1930.

" *To the Honorable Common Council, Utica, N. Y.*

" GENTLEMEN: In my annual message I clearly stated my position relative to the purchase of the so called Weaver Site as and for the Municipal Garage and Yard.

" Subsequently, at your meeting on January 15th, I addressed a communication to your Honorable Body, requesting the adoption of an Ordinance, directing the discontinuance and abandonment of the condemnation proceedings, instituted under the General Condemnation Law, and for which Commissioners had been appointed by the Supreme Court of the State. At the same meeting, an Ordinance was introduced to carry into effect the withdrawal of the City from the said condemnation proceedings. This Ordinance was lost.

" It is my earnest desire to save the City of Utica the large expense of acquiring this property, owned by George F. Weaver and Sons, for Municipal Garage purposes, and I sincerely request the co-operation of your Honorable Body in effecting the aforesaid

purchase. I therefore, again request your Honorable Body to pass an Ordinance directing the discontinuance of the so called Weaver Site. Respectfully submitted,

"CHARLES S. DONNELLEY,

"CSD:P "Mayor."

On April 2, 1930, Alderman Bushinger introduced an ordinance similar to that presented by Alderman Hansmann. On January 15, 1930, Alderman Hansmann moved for a discharge of the committee in consideration of his ordinance of February 19, 1930, which motion was carried, and thereupon the said ordinance of February 19, 1930, was voted upon and defeated. On May 7, 1930, Alderman Graham introduced an ordinance similar to the Hansmann ordinance of January 15, 1930, and Alderman Hansmann also introduced an ordinance of the same tenor as the ordinance of January 15, 1930. On May 21, 1930, Alderman Hansmann moved that the ordinance introduced by him on May 7, 1930, be taken from the table, which motion was carried. His ordinance was put to vote and was defeated. On June 4, 1930, Alderman Hansmann introduced an ordinance to abandon and discontinue the condemnation proceedings and directing the corporation counsel to make application to the Supreme Court for an order authorizing and directing such abandonment and discontinuance. This ordinance was objected to by Alderman Graham, who introduced an ordinance similar to the one introduced by Alderman Hansmann on January 15, 1930. Alderman Graham's ordinance was referred to committee. On July 2, 1930, Alderman Hansmann moved that his ordinance of June 4, 1930, be taken from the table, which motion was lost.

On July 2, 1930, the mayor submitted the following communication to the common council:

"THE CITY OF UTICA
"OFFICE OF THE MAYOR
"CHARLES S. DONNELLEY
"Mayor

"UTICA, N. Y.
"*July* 2, 1930.

"*To the Honorable Common Council, City of Utica, Utica, N. Y.*

"GENTLEMEN: On several prior occasions I have requested the co-operation of your Honorable Body in the matter of rescinding the Ordinances authorizing the Condemnation of the so called Weaver Tract.

"I consider this matter of deep municipal concern by reason of the inadaptability of the land in question for the purposes intended.

In view of the valuation placed on this property by the majority of the Commissioners in condemnation as well as dictum contained in the Supreme Court Justice's opinion confirming said report and in the firm belief that the majority of the tax payers of our City are unalterably opposed to the purchase of this property as a municipal garage site, I request the passage of the ordinances for Board rescinding your prior action in this matter.

" Very truly yours,
" CHARLES S. DONNELLEY,
" CSD :P                                        "*Mayor.*"

On July 10, 1930, the mayor issued the following call for a special meeting of the common council, to be held on July 14, 1930:

" THE CITY OF UTICA
" OFFICE OF THE MAYOR
" CHARLES S. DONNELLEY
" Mayor

"*To the Members of the Common Council of the City of Utica, New York.*

" GENTLEMEN: Pursuant to authority vested in me by law, I hereby call a Special Meeting of the Common Council of the City of Utica to be held in the Common Council Chambers, City Hall, on Monday Evening, July 14th, 1930, at Eight o'clock P. M., for the purpose of rescinding the ordinances heretofore adopted by your Honorable Body authorizing and directing the acquisition of lands by condemnation for the construction of a municipal garage, which lands are owned by George F. Weaver Sons Co.

" In my judgment said Special Meeting to be held, is required by public necessity.         " Yours respectfully,
" CHARLES S. DONNELLEY,
" Dated, UTICA, N. Y., *July* 10th, 1930."         "*Mayor.*

On July 14, 1930, at the special meeting called by the mayor, Alderman Graham moved that the committee be discharged from consideration of his ordinance of June 4, 1930. This motion was carried and the ordinance was adopted by a majority of one. The ordinance is as follows:

" By Ald. Graham: Ordained: That the Common Council of the City of Utica does hereby rescind, cancel and annul ordinance of the Common Council adopted June 5, 1929, authorizing the City Engineer and Corporation Counsel to negotiate for the purchase of land owned by George F. Weaver's Sons Co. pursuant to the report of City Engineer Cookinham, dated April 17th, 1929, for the construction of a municipal garage, and it is further

" Ordained: That the Common Council of the City of Utica

does hereby rescind, cancel and annul ordinance of the Common Council, adopted June 26th, 1929, directing publication and that application would be made to the Supreme Court for an order appointing Commissioners for the determination of damages and compensation to the owner of said property, to wit:

" Ordained: That any and all proceedings had or taken in condemnation relative to said matter be and the same hereby are rescinded, cancelled, and annulled."

On July 19, 1930, the city procured an order directing the defendant to show cause why this proceeding should not be discontinued and abandoned.

The matter came on before Mr. Justice LEWIS July 21, 1930, at Syracuse, and was sent by him to Special Term at Utica.

On the hearing at Utica the defendant appeared specially and objected to the jurisdiction of the court upon the following grounds: (1) That the call for the special meeting of the council, for July 14, 1930, was null and void in that it did not specify the correct and direct purpose for which the meeting was to be called, namely, to discontinue and abandon the instant proceeding; (2) that the ordinance passed at the special meeting of July 14, 1930, was and is null and void, for the reason that final order in condemnation proceedings had theretofore been entered, confirming the majority report of the commissioners and no permission of the court had been granted the city to discontinue and abandon said proceeding; (3) the said ordinance of July 14, 1930, did not directly, or by inference, instruct the corporation counsel to apply to the court for leave to discontinue and abandon the instant proceeding.

Aldermen Charles A. Thomas, Francis A. Davis, Anthony L. Marone, Edward J. Hirt, Daniel A. Kline, Van R. Weaver and Edward J. Roach, appearing as friends of the court, by their counsel, Mr. Russel S. Johnson, raised the same preliminary objections as the defendant, and in addition thereto the following preliminary objection: " That the call issued for Special Meeting of the council of July 14th, 1930, did not comply with Article 4, Section 33 of Second Class Cities Law, and is, therefore, void."

Section 18 of the Condemnation Law provides that upon application of the plaintiff, to be made any time after the presentation of the petition and before the expiration of thirty days after the entry of the final order, the court may, in its discretion, and for just cause shown, authorize and direct *the abandonment and discontinuance of the proceeding*, upon payment of the fees and expenses, if any, of the commissioners and the costs and expenses directed to be paid in such final order, if such final order shall have been entered, and upon such other terms and conditions as the court may prescribe.

The only action required by the council to institute the instant proceeding was to pass a resolution directing the corporation counsel to apply to the court for leave to discontinue and abandon the condemnation proceeding; instead, the council passed the above ordinance, which does not, in words, direct the corporation counsel to apply to the court for leave to discontinue and abandon said proceeding. The whole history of the matter, however, from the reception by the council of the mayor's message in January, 1930, to the adoption of the ordinance of July 14, 1930, is indicative of the fact that the mayor and some of the members of the common council were endeavoring to rescind the action of the common council in condemning said property.

The council rejected an ordinance which simply instructed the corporation counsel to apply to the court for leave to discontinue and abandon this condemnation proceeding, and it was argued from this fact that direction to the corporation counsel to make application to the court for leave to discontinue and abandon this proceeding cannot be read into the ordinance of July 14, 1930, which was purely a rescinding ordinance. The preliminary objection in this instance comes perilously close to being fatal. Although the council has been moving along pretty much in the dark as to the proper procedure, and the ordinance of July 14, 1930, is a nullity so far as it has any influence in ridding the city of this condemnation proceeding, I think, nevertheless, from the history of the matter, the ordinance survives for the sole purpose of reading into it an inference that the council intended to and did instruct the corporation counsel to apply to the court for leave to discontinue and abandon the said proceeding. In addition to this, the city has not paid the defendant the amount awarded to it. Such conduct, on its part, is some indication of an intent to apply for a discontinuance and abandonment of the proceeding. (2 Nichols Em. Dom. [2d ed.] § 419, p. 1104; Lewis Em. Dom. [3d ed.] § 956, p. 1684.)

While the call of the mayor for said special meeting does not use the words " discontinue and abandon," I think the council was not misled in any way, and that there was an intention to call the council into special session to act upon an application for leave to discontinue and abandon the condemnation proceeding. The council knew and understood, from the history of the matter, what the mayor had in mind when he called the special meeting, but did not know and did not follow, literally, the proper procedure.

The mayor was empowered to issue the call by section 54 of article 5 of the Second Class Cities Law. Article 4, section 33, of the Second Class Cities Law does not apply, as that provision relates

to the method by which the council itself may call a special meeting of its membership.

Having reached the foregoing conclusions, the preliminary objections must be overruled.

Up to the granting and entry of the final order confirming the majority report of the commissioners, the city could have discontinued and abandoned the condemnation proceeding without leave of the court. (*Matter of Commissioners of Palisades Interstate Park*, 216 N. Y. 104, 111.) After the granting and entry of such final order, retreat by the condemning party becomes more difficult and will be permitted only in the discretion of the court, upon just cause shown, for the reason that, after the entry of the final order confirming the award of the commissioners, the compensation awarded the owner of the property becomes unalterably fixed and such owner has a vested right to such compensation and can enforce payment according to the statute under which the condemnation proceedings were instituted. " This may pre-exist vesting of the title to the land in a municipal corporation," which, in the instant proceeding, will not occur until actual payment or tender to the defendant of the damages awarded. " It is sufficient if the amount of compensation has been fixed as a finality." When the report is confirmed, the relation of vendor and vendee is then established between the parties, which order of confirmation acts as a judgment binding both parties. (*Matter of Commissioners, etc., supra,* 110, 111; *Kahlen* v. *State of New York*, 223 N. Y. 383, 390.) Under those circumstances, the elementary requirements in favor of property rights inflexibly forbid the condemning party to change its mind, except upon just cause shown. (*Kahlen* v. *State of New York, supra,* 391.)

The question, therefore, to be determined here is as to whether or not the city has shown just cause sufficient to entitle it to retreat from its former position and to discontinue and abandon the proceeding in question.

While the present mayor of the city was endeavoring to induce the council to reverse itself in respect to the acquiring of the defendant's property, the city was actively engaged in litigating the question as to the amount the defendant should be awarded in return for its property, and it was only after the entry of the final order that the council, by a bare majority of one, decided to and attempted to reverse itself by rescinding all ordinances relating to the land in question. The friends of the court maintain that the alderman who changed his vote and made such action possible, did so from purely mercenary motives and without any change of conviction upon his part that the property in question was not a suitable site for the

proposed municipal garage and that it was not to the honest advantage of the city to acquire said property for such a purpose, or that the award of the commissioners was in any way excessive. The friends of the court further contend that said alderman, at heart, at the very instant he voted, favored the site in question and as evidence of this contention these friends of the court have submitted the following letter from him:

" *July* 26, 1930.

" Mr. George F. Weaver, *Treas., Amer. Hard Wall Plaster Co.,* *Utica, N. Y.*

" Dear George: I am sorry to hear the rumor that you are sore at me for my last actions at the Council Meeting, and hope that same is not so, for our relations in the past have been so friendly and I believed to the mutual benefit of both.

" As I explained to you as late as six o'clock of the day of the meeting that I was in favor of and would gladly vote to retain your site if pressure was not brought against me by the Commissioner in selling of hay and team and truck work by my brothers.

" Both my brothers and self appreciate the work given us by your Company and as there are many things in the near future in which I can be of help to you, and as you know the position I was in, I hope you will not hold this against myself and brothers.

" Very truly yours,

" DANIEL LAINO."

The friends of the court further contend that between January 1, 1930, and July 14, 1930, relatives of said alderman, in return for services rendered to the city, were paid $8,508.16. From these facts they argue that the alderman at the time he voted for the rescinding ordinance, was not a willing convert and did not have an honest change of heart in the matter. They maintain that someone connected with the city government applied pressure upon the said alderman which induced him to change his vote and vote for rescission under a threat of depriving his relatives of their source of income from the city. The commissioner of public works, with whose department said alderman's relatives dealt, denies this charge by affidavit. From the alderman's standpoint, at least, it is quite apparent what influenced him to change his mind and vote as he did. How he came to make the change is unimportant.

The city, as a basis for establishing the just cause required by the statute, presents to the court six propositions, namely: (1) The award of the commissioners is excessive; (2) the Weaver tract is not favorably located for a municipal garage; (3) the tract, at the best, will be too small when the necessary railroad sidings are laid;

(4) the cost of acquiring the property and building the necessary structures thereon is far in excess of what the city anticipated when it decided to condemn the property; (5) public sentiment is overwhelmingly opposed to the acquiring of the site in question for the purpose of a municipal garage; (6) the site is surrounded by large gasoline storage tanks and any structure erected thereon will be in serious danger of destruction from fire or explosion from said storage tanks.

The question as to the amount of the award was settled on the motion to set aside the report by the order of confirmation and is not open here for consideration.

In respect to the location of the Weaver tract, the old council investigated some twenty proposed sites and recommended the one in question. City Engineer Cookinham and Corporation Counsel Willis investigated the proposed site and both favored the selection. Former City Engineer and Commissioner of Public Works Kemper favored the said site before the old council passed the ordinance condemning it. It does not appear that before the new council changed its mind and rescinded the condemnation ordinances, it made any further investigation as to the merits or demerits of the said site. City Engineer Shaw claims that the site will be too small when additional necessary railroad sidings are laid thereon. This matter was under consideration by City Engineer Cookinham and by the council before the ordinance of condemnation was adopted. There are no plans before the court of the proposed structure. Hence, the court cannot determine to what extent, if any, the site in question would be too small to accommodate the structures which were supposed to be placed thereon. It does seem, however, that upon three acres of land, crossed by a single siding, the city might have reasonably sufficient room for trackage, garage and storage purposes suggested in the affidavits submitted herein.

Public sentiment is such an intangible thing that it cannot be considered upon a motion of this kind, particularly in the absence of some concrete evidence as to its existence. The mere assertion in an affidavit that public sentiment is opposed to the said site proves nothing. No proof has been submitted that any public meeting of citizens, protesting the acquiring of the site in question, has been held, or even suggested, or that the citizens of Utica have taken any action urging the city to retreat from these proceedings.

The site is well flanked by gasoline storage tanks, some few hundred feet distant therefrom. The court is of the personal opinion that an expensive structure and costly equipment should not be located in such propinquity to large storage tanks, which are

likely to ignite and explode. We are not informed by affidavit from the chief of the Utica fire department, a man eminently qualified to express an opinion thereon, as to what he thinks about selecting such a location for a municipal garage. What the court personally believes cannot be considered on this motion. The matter must be decided upon the evidence contained in the moving and answering papers.

The defendant submitted some proof by affidavit that the element of danger from fire or explosion on account of the distance of the storage tanks from said site is negligible and several experienced fire insurance agents depose that no increase of premium rate attaches to the location in question. On the affidavits submitted, the element of fire hazard appears to be slight.

The ground that the cost of the undertaking will be greatly in excess of that anticipated by the old council, when it decided to condemn the property, is the only cause meriting serious consideration. The ordinance of January 23, 1929, making the appropriation for the site and proposed garage structures, provided as follows: "Ordained that corporate bonds of the City of Utica be issued in the sum of One Hundred Thousand Dollars ($100,000.00), for the purpose of providing funds for the acquiring of lands for the construction of a municipal garage and for the erection of such garage." The estimate, at the time the ordinance was adopted, was $20,000 for the land and $60,680 for building construction. The cost of the site, plus expense of condemnation, amounts to substantially $40,000. This will leave $60,000 for the garage structures. As to whether or not suitable garage structures could be erected at this figure does not appear in the moving papers, nor does it appear what additional appropriation would be required. Assuming that $20,000 more would be required for building purposes, would it not be wiser to appropriate that amount than to lose the $10,000 which the city already has invested in the property and, perhaps, additional expense if it were allowed to retreat from the proceedings? So far as appears, no plans or specifications for the proposed structures were ever prepared. Apparently, the figure of $80,680 for building purposes was only an estimate. It is a fact that the cost of building is considerably lower now than it was in late 1928 and early in 1929, at the time this estimate was given. The city has submitted the affidavit of no contractor or builder to show what structures, adequate to meet the requirements of the city, would cost and the burden of so doing is upon it. The city's contention, in this respect, rests entirely upon the affidavit of City Engineer Shaw, who, so far as appears, is neither a contractor nor a builder.

What constitutes just cause? Just cause means fair, adequate,

reasonable cause, cause conforming to the requirements of right, a lawful ground, as right in accordance with law and justice. (*Bregman* v. *Kress*, 83 App. Div. 1.)

No fraud, mistake, misconduct, irregularity, judicial error or inequity in the proceeding is claimed by the city. The city has advanced no reason or argument for discontinuance and abandonment of the proceeding which it did not possess prior to the date of the confirmation of the report of the commissioners. In the absence of any of the foregoing reasons, any of which would entitle the city to retreat, there must be some overpowering, overmastering reason, discovered by the city since the order of confirmation was granted and entered, to move the court to allow the city to discontinue and abandon the proceeding and unsettle rights fixed by the final order between it and the owner, such for example, as, if the New York Central Railroad Company should desire said site for the orderly and necessary expansion of its business, or that the property for some reason became inundated or that quicksand underlay it, thereby enhancing the cost of necessary foundations, or the State Department of Health should intervene and forbid selection of such a site for the preservation of public health, or that the city had determined to have all of its activities done by contract, thereby rendering it unnecessary to have any substantial amount of motor equipment. In the absence of like reasons, there is nothing upon which the court can exercise its discretion to allow the city to discontinue and abandon this proceeding.

The common council of 1928–1929 was of the opinion that public necessity required the selection of the site in question. The common council of 1930–1931 decided to the contrary. The personnel of the two councils is substantially the same. The city engineer and the corporation counsel of 1928–1929 recommended the acquiring of the site. The city engineer and the corporation counsel of 1930–1931 are opposed to it. The factors upon which the two sides have reached different conclusions are almost identical. As between these conflicting opinions, what is there to move the court to the exercise of its discretion to undo an instrument as solemn as a judgment? The old and the new officials of the city, referred to herein, were and are perfectly sincere in their attitude and both were animated solely by what they believed to be for the best interests of the city. When " A " signs an agreement to purchase " B's " property, he cannot expect " B " to release him in the absence of some fraud or substantial inequity which " B " practiced on him. The mere fact that " A " changes his mind and no longer desires the property is not sufficient to entitle " A " to rescind his agreement. An order of confirmation is even more binding than a mere contract to purchase.

The mere fact that the city has changed its mind is no reason for allowing it to retreat from the proceeding in question, even if the change of mind was animated solely because it was not deemed for its best interests to complete the purchase. (*Matter of Commissioners of Palisades Interstate Park, supra*, 112.) In that case the court said: " but no decision in this state has been called to our attention holding that a municipal or other corporation may after confirmation of the report of commissioners of appraisal abandon proceedings to acquire lands by condemnation and *refuse to pay the award made to the owners because it is not deemed for the interest of the municipality or other corporation to complete the purchase.* (Italics are writer's).

Finally the defendant contends that the city is estopped from discontinuing and abandoning this proceeding by reason of the fact that it has complied with all of the provisions of the final order except the one relating to payment of the defendant's award. It is true that, prior to the holding of the special meeting of the council, the city voluntarily paid all of the costs and expenses of the proceeding without permission from the court, other than the directions contained in the final order. If, at the time these payments were made, the city authorities intended, if the council would permit, to apply for leave to discontinue and abandon the proceedings, it should have withheld such payments until the decision of the court on its application. Section 18 of the Condemnation Law contemplates that such payments will not be made until permission to cancel and abandon has been granted. While the city should have withheld payment until the determination of the application to discontinue and abandon, yet, no matter what the outcome of the application might be, such allowances would have to be paid in the end; consequently, I am unable to see how the mere premature payment of such allowances would estop the city from pressing this application.

The city calls the attention of the court to the case of *N. Y., O. & W. R. R. Co.* v. *Nelson*, 152 App. Div. 245, wherein the plaintiff was permitted to discontinue and abandon condemnation proceedings after order of confirmation of the condemnation commissioners' report was granted and entered, and the plaintiff argues that this case is controlling here. In the said case the plaintiff condemned certain land in Fulton which it needed for the expansion of its business. Upon the coming in of the report of the commissioners, the plaintiff discovered that the land was costing it far more than had been anticipated and it thereupon, decided to forego the extension of its property as proposed and to use other facilities and made application to the court for leave

to discontinue, basing its right upon the excessiveness of the award and its intention to abandon the proposed expansion. The Special Term denied the application and the Appellate Division reversed the Special Term and granted the application. The decision of the Appellate Division seemed to turn on the proposition that the Ontario and Western had decided to forego expansion in the direction proposed and use other facilities and the court also thought that the award was, in fact, excessive. In the instant matter both sides are agreed that the city needs a three-acre site for a municipal garage and that the erection of such a garage is a pressing need in order to put the valuable equipment of the city under cover from the elements and the issue turns primarily on the location of the site. There is no intention upon the part of the city to abandon the idea of building a municipal garage on a three-acre site. Principally on account of this distinguishing feature the N. Y., O. & W. Case (supra) is not in point.

It may well be that the city could acquire a much cheaper site for the construction of its garage, one that is free from most of the objections urged against the instant one. That was a question for the council which determined to condemn the Weaver site. It is not open here. This court has no right to substitute its judgment for that of the common council.

On the papers before the court, the facts and the law march with measured tread to the irresistible conclusion that no just cause has been shown by the city of Utica why it should be permitted to discontinue and abandon these proceedings.

The application, therefore, is denied, without costs.

Ordered accordingly.